**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **ANDRE MARCUS THOMAS,** | § | |
| **TDCJ No. 02574963,** | § | |
| | § | |
| **V.** | § | **A-25-CV-01546-RP** |
| | § | |
| **T. HARRIS, R. FOREHAND, and** | § | |
| **WILLIAMSON COUNTY JAIL,** | § | |
| **Defendants.** | § | |

## ORDER

Before the Court are Plaintiff Andre Marcus Thomas's complaint filed pursuant to 42 U.S.C. § 1983, and Defendants R. Forehand and T. Harris's Motions to Dismiss. (ECF Nos. 1, 11-12.) Plaintiff is proceeding pro se and in forma pauperis. Upon review of the parties' pleadings, the Court grants Defendants' motions to dismiss and dismisses Plaintiff's complaint.

## I. FACTUAL BACKGROUND

Plaintiff is currently incarcerated at the Diboll Unit in the Texas Department of Criminal Justice—Correctional Institutions Division (TDCJ-CID). However, at the time Plaintiff filed his complaint, he was confined to the Williamson County Jail. He names as defendants T. Harris, a county dentist, R. Forehand, Medic Officer, and the Williamson County Jail.

Plaintiff alleges that, between August 28 and September 3, 2024, he had x-rays done at Austin Family Orthodontist in Round Rock, Texas. He states he was prescribed a 10-day course of amoxicillin after which he was to have two teeth extracted. Plaintiff states he was arrested on September 8 or 9, 2024. On September 23, 2024, Plaintiff alleges he put in a request ticket, stating he was having extreme pain and not able to eat or sleep. Plaintiff states he received a response on September 27, 2024, stating he had been put on the wait list to see a dentist and would receive amoxicillin and ibuprofen for pain and discomfort.

Plaintiff states that, while his initial request was pending, he sent in two additional requests, one of which was immediately answered by Lieutenant R. Barnett, who said he would send a medic that day to evaluate Plaintiff. Plaintiff alleges Barnett came to personally escort him to medical and Plaintiff told him he had been on antibiotics prior to being arrested. Plaintiff states Barnett told him it would be faster if Plaintiff's family could drop off his personal medication at the jail. Plaintiff alleges he immediately called his stepdaughter and that she dropped off the medication to the jail at 8 a.m. on September 24, 2024. However, he states he never received this medication and was in unbearable and excruciating pain.

Plaintiff alleges that, on October 7, 2024, he was evaluated by Defendant Harris, who told Plaintiff he needed a full cycle of antibiotics and that it would be several weeks before the extraction could be done because the jail was in the process of buying camera equipment for x-rays. Plaintiff states he told Defendant Harris he previously had x-rays done, and Harris replied that if Plaintiff could have them dropped off at the jail, he would move Plaintiff to the front of the wait list and likely perform the extraction the following week. Plaintiff states his x-rays were dropped off and his extractions were scheduled for October 25, 2024.

Plaintiff alleges that, when he went to have his teeth removed, Defendant Harris asked which one hurt the most and proceeded to extract that tooth. Plaintiff alleges Harris told Plaintiff he had removed the tooth, that Plaintiff did not require stitches, and prescribed Tylenol 3 and Ibuprofen for pain. Plaintiff states that, on October 26, 2024, he noticed the inside of his jaw was cut up and bleeding from broken pieces of tooth that remained in his gums from the extraction. He alleges that he was not taking antibiotics and that, within days, he developed an infection that quickly spread causing his ankles and right hand to swell. Plaintiff alleges that, on November 6, 2024, Defendant Forehand forced him to sit back while Defendant Harris slapped him. Plaintiff

2

seeks compensatory and punitive damages for mental anguish, emotional distress, and pain and suffering. (ECF No. 1.)

Defendant Forehand moves to dismiss Plaintiff's complaint, arguing Plaintiff fails to state a claim against him in his individual and official capacities, and that he is entitled to qualified immunity. (ECF No. 11.) Defendant Harris also moves to dismiss, arguing Plaintiff's allegation that Harris slapped him is conclusory and without factual enhancement, and that he does not raise a plausible medical negligence claim. (ECF No. 12.) Plaintiff did not respond to either of the motions to dismiss.

On January 29, 2026, the Court ordered Plaintiff to show cause why this case should not be dismissed for want of prosecution, noting that Plaintiff was no longer confined to Williamson County Jail but had failed to submit a change of address. The Court also stated that, should Plaintiff want to respond to Defendants' motions to dismiss, he must do so on or before February 27, 2026. (ECF No. 13.) On February 25, 2026, Plaintiff filed a change of address with the Court (ECF No. 14); however, to date, he has not responded to Defendants' motions to dismiss.

## II. LEGAL STANDARDS

### 1. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678.

In deciding a motion to dismiss under Rule 12(b)(6), a court will accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *See Raj v. La. State Univ.*, 714 F.3d 322, 329-30 (5th Cir. 2013). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 679. Further, a plaintiff's factual allegations must establish more than just the "sheer possibility" a defendant has acted unlawfully. *Id*. Determining a complaint's plausibility is a "context-specific task," but if the factual allegations "do not permit the court to infer more than the mere possibility of misconduct" the complaint has failed to meet the pleading standard under Rule 8(a)(2). *Id*. at 678.

The Court construes a pro se plaintiff's allegations liberally, holding the plaintiff to "less stringent pleading standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, a plaintiff's pro se status is not an "impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986).

2. Section 1983

Section 1983 provides a cause of action to individuals whose federal rights have been violated by those acting under color of state law. *Doe v. Dall. Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). Section 1983 is not itself a source of substantive rights; rather, it merely provides a method for vindicating federal rights conferred elsewhere. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994). In order to state a claim under § 1983, a plaintiff must (1) allege a violation of rights guaranteed by the United States Constitution or federal law, and (2) demonstrate the alleged deprivation was committed by a person acting under color of state law. *Doe*, 153 F.3d at 215.

3. Qualified Immunity

Qualified immunity is a legal doctrine whereby government officials performing discretionary functions are shielded from liability for civil damages so long as their actions do not violate a clearly established right of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). At the motion-to-dismiss stage, a district court must find that the plaintiff's pleadings assert facts, which, if true, would overcome the defense of qualified immunity. *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). "Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Id*. Additionally, "when a defendant asserts a qualified-immunity defense in a motion to dismiss, the court has an obligation ... to carefully scrutinize [the complaint] before subjecting public officials to the burdens of broad-reaching discovery." *Longoria ex. rel. M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 263-64 (5th Cir. 2019).

Qualified immunity is a two-step analysis. First, on a motion to dismiss, the plaintiff must allege sufficient facts showing a violation of her constitutional rights under current law. Second, a district court must determine whether the right in question was clearly established at the time of the alleged violation. If the plaintiff does not assert sufficient facts or the right was not clearly established, then a defendant is entitled to qualified immunity. *See Bevill v. Fletcher*, 26 F.4th 270, 275 (5th Cir. 2022) (stating general contours of qualified immunity analysis); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (courts have discretion to decide which prong of the qualified immunity analysis should be analyzed first).

### III. DISCUSSION

1. Williamson County Jail

The Williamson County Jail is not a legal entity capable of being sued. *See Guidry v. Jefferson Cnty. Det. Ctr.*, 868 F. Supp. 189, 191 (E.D. Tex. 1994) (holding that the Jefferson County Detention Center is not a legal entity subject to suit); *see, e.g., Darby v. Pasadena Police Dep't*, 939 F.2d 311 (5th Cir. 1991) (holding that police and sheriff's departments are governmental subdivisions without capacity for independent legal action). Accordingly, Plaintiff's claims against the Williamson County Jail are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) (a court shall dismiss, at any time, a case filed *in forma pauperis* if it determines the action fails to state a claim on which relief may be granted).

2. Excessive Force

Plaintiff alleges Defendant Harris assaulted him by slapping him while Defendant Forehand restrained him in a chair. The Court construes this claim as alleging excessive force in violation of the Fourteenth Amendment.

To state a claim for excessive force, Plaintiff must show an "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005) (citing *Harper v. Harris Cnty.*, 21 F.3d 597, 600 (5th Cir. 1994)). Here, while Plaintiff alleges Harris slapped him while Forehead forced him to sit back, Plaintiff fails to allege he suffered any injury. Rather, most of Plaintiff's complaint focuses on events leading up to his tooth extraction and then the infection he alleges he suffered afterward. The allegations regarding slapping and holding back account for two sentences in Plaintiff's complaint.

Further, Plaintiff has had since November 2025 to respond to Defendants' motions to dismiss, which both Defendants sent to Plaintiff at the Diboll Unit. The Court even offered Plaintiff another opportunity to respond to Defendants' motions in its February 2026 show-cause order, but, again, Plaintiff has not responded. Accordingly, because Plaintiff does not allege he suffered any injury from being slapped, the Court concludes he has failed to state a claim for excessive force. Further, based on Plaintiff's allegations and failure to respond to Defendant Forehand's motion to dismiss, the Court concludes Defendant Forehand is entitled to qualified immunity on this claim.

3. Deliberate Indifference

Plaintiff alleges Defendant Harris removed a tooth from his mouth, but that, afterwards, parts of the tooth remained in his jaw. He further alleges he was not provided with antibiotics and that, as a result, he suffered an infection that led to swelling in his ankles and wrist. The Court construes this as a claim alleging Harris was deliberately indifferent to Plaintiff's medical care.

"A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an 'unnecessary and wanton infliction of pain.'" *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). Although pretrial detainees are protected by the Fourteenth Amendment's Due Process Clause, *see Alderson v. Concordia Parish Corr. Fac.*, 848 F.3d 415, 419 (5th Cir. 2018), "Fourteenth Amendment case law concerning pretrial detainees [is based] on the Supreme Court's Eighth Amendment precedent concerning prisoners," *Garza v. City of Donna*, 922 F.3d 626, 634 (5th Cir. 2019) (citations omitted).

To state a claim for deliberate indifference regarding his medical care, a plaintiff must show an official knew of and disregarded an excessive risk to the inmate's health or safety, i.e., the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A plaintiff can demonstrate a constitutional violation by showing "that a prison official 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Easter*, 467 F.3d at 464 (quoting *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001)).

"Deliberate indifference is an extremely high standard to meet." *Domino*, 239 F.3d at 756. Claims of inadvertent failure to provide medical care or negligent diagnosis are insufficient to state a claim of inadequate medical care. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Similarly, unsuccessful medical treatment or disagreement between an inmate and his doctor concerning the manner of treatment does not give rise to a constitutional cause of action. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). "[A] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Sims v. Griffin*, 35 F.4th 945, 949 (5th Cir. 2022) (quoting *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006)).

Plaintiff's allegations do not state a deliberate-indifference claim against Defendant Harris. At most, he alleges Harris was negligent in his removal of Plaintiff's tooth. Further, his allegations in his complaint are contradictory: at one point, he states Harris sewed up bits of broken tooth into his gums (ECF No. 1 at 4), whereas he later states Harris told him the extraction did not need stitches to heal (*id.* at 9). Plaintiff fails to allege any facts suggesting Harris refused to treat him,

ignored his complaints, or intentionally treated him incorrectly. Accordingly, this claim also fails as a matter of law.

### 4. Failure to Protect

The Court also construes Plaintiff as raising a failure-to-protect claim against Defendant Forehand, for allegedly holding Plaintiff down while Harris allegedly struck him. To state a claim of failure to protect, a prisoner must show that (1) "he is incarcerated under conditions posing a substantial risk of serious harm," and (2) that prison officials were deliberately indifferent to that risk. *Farmer*, 511 U.S. at 832-34. Plaintiff's claims are wholly insufficient to meet this standard: he does not allege Forehand had any foresight or awareness that Harris might slap Plaintiff. Accordingly, based on Plaintiff's allegations and his failure to respond to Forehand's motion to dismiss, the Court concludes Forehand is entitled to qualified immunity on this claim.

### 5. Municipal Liability

To the extent Plaintiff names either Defendant in their official capacity, the Court concludes he fails to state a claim for municipal liability. A municipality cannot be held responsible for the unconstitutional actions of its employees based on a respondeat superior theory of recovery; rather, a municipality is responsible only for its own illegal actions. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 694 (1978). To establish a municipality's liability under § 1983, a plaintiff must assert a cognizable violation of a constitutional right by a person executing the municipality's policy. *Windham v. Harris Cnty.*, 875 F.3d 229, 243 (5th Cir. 2017). Further, the alleged constitutional violation must be connected to an official custom, policy, practice, ordinance or regulation of the municipality. *Monell*, 436 U.S. at 690-94. Thus, to state a claim for municipal liability, a plaintiff must show: (1) a policy or custom existed; (2) the governmental policy makers actually or constructively knew of its existence; (3) a constitutional violation

occurred by a person acting under the color of state law; and (4) the custom or policy served as the moving force behind the violation. *Meadowbriar Home for Child., Inc. v. G.B. Gunn*, 81 F.3d 521, 532-33 (5th Cir. 1996).

Plaintiff fails to state a claim for municipal liability because he fails to show that a constitutional violation occurred. Further, even if Plaintiff did show his constitutional rights were violated, nowhere in his pleadings does he identify a Williamson County policy, practice, or custom that was the moving force behind actions against him. Accordingly, this claim also fails as a matter of law.

6. State Law Claims

Plaintiff may also be seeking to raise state-law claims for assault and medical malpractice. In general, a federal court that has original jurisdiction over some claims has the discretion to exercise supplemental jurisdiction over state-law claims. 28 U.S.C. § 1367(a). However, because the Court dismissed the federal claims over which it had original jurisdiction, it must decide whether to retain supplemental jurisdiction over Plaintiff's state-law claims. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (Supplemental jurisdiction over state law claims is a "doctrine of discretion, not of plaintiff's right."). Federal district courts enjoy "broad discretion in deciding whether to retain supplemental jurisdiction over a state law claim once all federal claims are dismissed." *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993).

Here, the original basis for federal jurisdiction—Plaintiff's claims alleging violations of his Fourteenth Amendment rights—have been dismissed for failure to state a claim. Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims. *See Heggemeier v. Caldwell Cnty.*, 826 F.3d 861, 872 (5th Cir. 2016) ("[A] court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated

10

before trial.") (quoting *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 599 (5th Cir. 2009)).[1]

It is therefore **ORDERED** that Plaintiff's claims against Defendant Williamson County Jail are **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B).

It is finally **ORDERED** that Defendants' Motions to Dismiss (ECF Nos. 11-12) are **GRANTED** and Plaintiff's complaint is **DISMISSED WITHOUT PREJUDICE**.

SIGNED this 2nd day of April, 2026.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

---

[1] The Court notes that the statute of limitations for Plaintiff's medical-malpractice state-law claim is two years, TEX. CIV. PRAC. & REM. CODE ANN. § 74.251(a) (West 2025) and starts running from the occurrence of the breach or tort, the last date of the relevant course of treatment, or the last date of the relevant hospitalization, *Mitchell v. Methodist Hosp.*, 376 S.W.3d 833, 835 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).